UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-354 (JWB)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ASAD AHMED ADOW,

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and Asad Ahmed Adow (hereafter, the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereafter, "the United States" or "the government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.   **Charges**. The defendant agrees to plead guilty to Count One of the Information, which charges the defendant with wire fraud, in violation of 18 U.S.C. § 1343. The defendant fully understands the nature and elements of the crimes with which he has been charged.

2.   **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count One of the Information. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

1

From in or about March 2022 through April 2025, the defendant knowingly carried out a scheme to defraud the Housing Stabilization Services ("HSS") program, a Medicaid program designed to help people with disabilities and addictions find and maintain housing. Rather that provide such help, the defendant obtained and misappropriated millions of dollars in program funds that were intended as reimbursements for services provided to those people.

Specifically, the defendant was the owner of Leo Human Services LLC. The defendant registered Leo Human Services with the State of Minnesota in or about March 2022. He ran the company out of his home in Blaine, Minnesota and a business suite in Brooklyn Park, Minnesota.

The defendant enrolled Leo Human Services as a Housing Stability Services Program provider in August 2022. The defendant then submitted false and fraudulent claims to having provided Housing Stability Services to individuals in need. In reality, the defendant and his employees provided few services to their purported clients and they claimed to be entitled to HSS Program payments far greater than the services they actually provided.

The defendant directed his employees at Leo Human Services to bill as much as they could. At the same time, the defendant made clear to those employees that he would not scrutinize the purported billable hours his employees submitted. In this way, the defendant incentivized his employees, who were paid hourly wages, to inflate their hours. The defendant then submitted these fraudulent claims for Medicaid reimbursement.

The defendant also trained his employees at Leo to create notes detailing the purported services they provided. The HSS Program does not require providers to submit such notes to receive reimbursements. Nevertheless, the defendant directed his employees to create service notes so that the company would have them in case the Minnesota Department of Human Services ever conducted an audit. The defendant knew that his employees were manufacturing notes that falsely represented their having provided Program services.

The defendant agrees that he sent, or caused to be sent, communications in interstate commerce in furtherance of his fraud scheme, including through the use of email accounts hosted by Google.

In all, the defendant, through Leo Human Services, claimed to have provided HSS Program services to about 250 beneficiaries. Based on his fraudulent claims, the defendant claimed entitlement to about $2.7 million in HSS Program payments. The defendant diverted much of these payments to his co-conspirators. He also used the proceeds to invest in real estate in Kenya, to fund his lifestyle, and to lease an apartment and a 2024 BMW X4 luxury crossover SUV.

3. **Waiver of Indictment**. The defendant waives the right to be charged by Indictment. The defendant agrees to sign a written waiver of this right at the change of plea hearing.

4. **Waiver of Pretrial Motions**. The defendant understands and agrees that he has certain rights to file pretrial motions in this case. As part of this plea agreement, and based upon concessions of the United States within this plea

agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pretrial motions in this case.

5. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The Defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

6. **Additional Consequences.** The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

7.  **Statutory Penalties**. The defendant understands that Count One of the Information (wire fraud, in violation of 18 U.S.C. § 1343) is a felony offense that carries the following statutory penalties:

   a. a maximum of 20 years in prison;

   b. a supervised release term of not more than 3 years;

   c. a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

   d. restitution as determined by the Court; and

   e. a mandatory special assessment of $100.

8.  **Revocation of Supervised Release**. The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9.  **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

5

a. Base Offense Level. The parties agree that the base offense level is 7. U.S.S.G. § 2B1.1(a)(1).

b. Specific Offense Characteristics. The parties agree that a 16-level enhancement applies pursuant to Guidelines § 2B1.1(b)(1)(I) because the intended loss exceeded $1.5 million. The parties agree that a 2-level enhancement applies pursuant to Guidelines § 2B1.1(b)(7) because the defendant was convicted of a federal health care offense involving a government health care program and the loss to the government health care program was more than $1 million. The parties agree that no other specific offense adjustments apply.

c. Chapter 3 Adjustments. The parties agree that a 2-level enhancement applies pursuant to Guidelines § 3B1.1(c) because the defendant was an organizer, leader, manager, or supervisor of the criminal activity. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

d. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f. <u>Guidelines Range</u>. If the adjusted offense level is 24, and the criminal history category is I, the Sentencing Guidelines range is 51-63 months of imprisonment.

g. <u>Fine Range</u>. If the adjusted offense level is 24, the Sentencing Guidelines fine range is $20,000 to $200,000. U.S.S.G. § 5E1.2(c)(3).

10. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

11. **Agreements as to Sentencing Recommendation.** The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

12. **Special Assessment.** The Sentencing Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

13. **Restitution Agreement.** The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Information. The defendant agrees that he owes restitution in the amount of $2,710,832.

14. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse,

nominee or other third party, or any business owned or controlled by the Defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

15. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the wire fraud scheme charged in Count 1 of the Information, including but not limited to:

  a. $48,600 in U.S. currency seized from various locations within Anwar Adow's bedroom at 3169 127th Avenue NW, Blaine, MN, including $41,600 from a safe; $6,000 under a mattress; and $1,000 on a desk;

  b. $14,760 in currency seized from a safe located within the defendant's bedroom at 3169 127th Avenue NW, Blaine; and

  c. $25,000 in U.S. currency seized from a suitcase in the closet under the stairs at 3169 127th Avenue NW, Blaine.

The defendant agrees that this property is subject to forfeiture because it constitutes, or is derived from, proceeds traceable to the wire fraud scheme charged in Count 1 of the Information.

16. The defendant agrees that the United States may, at its option, forfeit the property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture, directly or through any company he owns or controls, on any grounds. To the extent the defendant has requested remission or mediation of the forfeiture of the property, he withdraws any such requests. The defendant agrees not to assist any third party in challenging the forfeiture of the property.

The defendant consents to the entry of a money judgment forfeiture in the amount of $2,827,281, which represents the amount of proceeds Leo Human Services obtained from the wire fraud scheme alleged in Count 1 of the Information. The defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from him in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

17. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes,

but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant has discussed these rights with his attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

18. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

19. **Complete Agreement.** The defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the government and the defendant.

Dated: 11/17/25

DANIEL N. ROSEN
United States Attorney

BY: DANIEL W. BOBIER
JOSEPH H. THOMPSON
MATTHEW C. MURPHY
Assistant United States Attorneys

Dated: 11/17/25

ASAD AHMED ADOW
Defendant

Dated: 11/17/25

JOE TAMBURINO
WILLIAM BAILEY
Counsel for Mr. Adow